Good morning. I'm Nate Crowd and I represent the claimant in this appeal. I would like to reserve five minutes of my time for rebuttal. Because the government brought a summary judgment motion on the basis of the claimant's lack of standing, that is where the district court focused in reaching its decision. However, the district court skipped a threshold step. And that threshold step is whether the government, in fact, had standing to maintain this action. Under CAFRA, the government must show, by a preponderance of the evidence, that the subject properties are subject to being forfeited. Now, doesn't that conflate ultimate merits with standing? And the government ultimately has to prove, any plaintiff ultimately has to prove, but we don't apply that test at the courthouse door to find out whether they're standing. I actually, Your Honor, I believe in forfeiture proceedings, the statute contemplates that the government cannot, the government doesn't have access, essentially, to the court unless it demonstrates the relationship between the property, which it wishes to seize, and the criminal or alleged criminal activity. So I do believe that that is up front and that must be resolved, I believe, before any issue of the claimant's standing or any issue of the claimant who would have the burden. Well, but you're not even there, unless you have standing, you're not even there to raise that issue. Is the government by itself at that stage? Well, I believe that it's the government as the plaintiff that has to initially demonstrate that it has the right to be in an Article III case. And it has to allege it. It has to allege it, but this statute calls for a preponderance of the evidence. In other words, pre-CAFRA, the government merely had to demonstrate by a probable cause, very, that's a much lower threshold. Under the statute post-CAFRA, it is by a preponderance of the evidence. That, that, that, but that's a, that's a proof issue, isn't it? You don't have to, when someone files a complaint, they don't have to prove their case. They don't have to prove it to the extent of that, you know, a jury would rule in their favor. They do have to show, they have to make a showing that this property, which they want to seize, has been involved in criminal activity or the proceeds were used to purchase. They have to, they have to allege sufficient fact from which a trier of fact could find that, or they have to actually present evidence? I believe they have to present, they have to make some sort of a showing. Let's, let's assume, however, Your Honor, that all they have to do is allege it. What did they allege here? They allege that the Bucelles, that the Bucelles undervalued property on their bankruptcy petition, and that the Bucelles engaged in some form of a falsely encumbered that property to make it look as though it had, it was worth less than it was. Well, what they have to, what the government still has to show, and what it has not or even afterwards, is that the, that the Bucelles were the owners of that property that's at issue, as opposed to the irrevocable trust. Now, I know there's overlap, obviously, between, can the claimants come in and show they have standing, that they are the owners, or they don't have to show that, but they just make the low-threshold Article III showing to be. And the government has a low-threshold Article III showing, or a low-threshold with regard to the Article III standing. I understand you are trying to argue that the statute imposes something more, but I have to say it's getting dangerously close to saying the government has to win before it can enter the courtroom. But even if the government had a low-threshold, something more than probable cause, but even a low-threshold, they have to tie it to the property, and they have to tie it to the owners of that property. There must be something. And I'm just saying, if you look in the record, it isn't there. It isn't there, as I say, as opposed, vis-à-vis the irrevocable trust. Let me turn to you. It isn't there because the property properly belongs to the irrevocable trust or isn't there because of some other defect. I mean, we're really talking about the irrevocable trust here. That is correct. Okay. And let me get something else clear. Exactly who or what do you represent? Who's the claimant here? The claimant is the Bucelle Family Trust. There's been and let me. I understand that you're not responsible for the opening brief, but I have to say I had a hard time as I went through the opening brief trying to figure out exactly who this claimant was. I'm representing the Bucelle Irrevocable. Second trust. Second trust. The second trust. Second trust. And there are disputes over did the assets of the irrevocable trust ultimately end up in the irrevocable trust. It's our position that indeed everything that the Bucelles owned or anything that was in the revocable trust, which they also owned because it was a revocable trust, ultimately was transferred into the irrevocable trust. I stand here today representing the irrevocable trust. Let me turn to the claimant's standing, the low threshold that the claimant had to show. The Bucelles clearly evidenced, and this is in Exhibit A to the irrevocable trust, their intent to transfer all their property to their children, the children being the beneficiaries of the irrevocable trust. Well, they subsequently didn't act that way, though. I mean, there are subsequent transfers of property not by the irrevocable trust, assigned by the Bucelles. Your Honor, the pivotal point there is that if the irrevocable trust document was effective to transfer the property at that point in time, that is when the property transferred. No, but is it? Is it effective? I mean, even if it's what they said they wanted to do, there are still statutory formalities with which they have to comply. Well, there are. The Headstat opinion makes clear that if you don't have all the niceties, you don't cross all the T's and dot the I's, if your intent is apparent from the face of the document, the Court can look elsewhere to make up, to find what your properties were that you are transferring. Well, but there has to be a limit on the intent in the sense that, I mean, the description of property when you transfer it to the irrevocable trust is open-ended. What you call encompassing. But plainly, they didn't behave that way. And I can't escape some impression that, well, because they subsequently transferred the property not using the irrevocable trust. You can't, and the fact that there was nothing specific identified here, you can't escape the impression that the intent was, we're going to shove everything aside if we have to and use it ourselves in the meantime. The beneficiaries of the irrevocable trust have an equitable interest at the moment the trust is set up. If the settlers subsequently do something inconsistent with it, that is irrelevant to whether the trust was funded. It all gets back to that threshold. But it gets back to the intent. I mean, is it your position that this Exhibit A attached to the irrevocable trust transferred everything they owned that could be transferred? Everything that fits within those four paragraphs, yes. And it seems to me that's everything. And that's everything. So that means that whatever car they drove to the doctor's office in didn't belong to them from the moment they signed this. It means that their ability to get the car out of the parking garage didn't belong to them because the $5 they had in his pocket to pay the parking bill didn't belong to him anymore. I mean, to have something that is so completely all-encompassing is when it's inconsistent with the actual behavior suggests that it's simply a device to shelter what has to be sheltered when the time comes. Let me go back to the procedural posture of this case. Now, we're talking about a summary judgment here. If there are issues as to is this believable, is this not believable, those are credibility issues. Well, but I'm actually back a little bit earlier than that. Let's say that the trust you represent was intended to be a catch-all. It has a different trustee than the first trust did. The evidence shows that the first trust continued to exist even after the second one was created. And as Judge Clifton pointed out, there's a disposition of property outside of the second trust. Is it your view that in California there is no longer a statute of frauds? In other words, if you have trust number one and the trust doors and the trustees are the Buccelles, and then you have trust number two and the trust doors are the Buccelles and the trustee is a third party, that this catch-all language you have in trust number two is sufficient as against the world to transfer title to real property? If I may answer in two ways. First of all, statute of frauds is well and alive in California and elsewhere. Secondly, the district court erred by applying California's statute of frauds law to the Utah condo. But Utah's got a statute of frauds too. The Utah has a statute of frauds. But under Utah Code 25-5-1, it requires either a deed or a written conveyance. It doesn't require anything more than what this. So that's a written conveyance? There's no description of the property? I'm a creditor. I'm a third party. And that ties into the beverage, the canton, place or mining company. I'm jumping back to California. But in that case, our Supreme Court said that is certain, which can be made certain. It can be made certain by reference to excessive beverage. So you apply California law even though we're talking about the Utah? In terms of what a valid trust is, that would be California law. In terms of the ranch properties, that would be California law because it's in California. The Utah statute would govern the Utah condo, obviously. And that's not, that wasn't argued in the district court, was it? The Utah provision? Perhaps I misread the record. Is that issue preserved, that Utah law? I believe it was, but since we're on de novo review, what law is applicable, I believe, would follow. I don't think it would be waived by someone saying, not specifically pointing out to the district court, oh, wait a minute, Utah law should apply here. I can't imagine that that would be the situation, Your Honor. But let me back up. In the Smith v. Osguthorpe case, which we cited, that's Utah, the court basically said in a provision, there was a partner dissolution agreement, and the court rejected the statute of frauds argument because the provision said I'm transferring all my property, or rather all the partnership, my interest in all the partnership property. The partnership property could be deciphered by looking to the extrinsic evidence. It wasn't a situation, there too, it wasn't a situation where here is all the property and the deed says it. There was no deed. It was just a partnership dissolution. Utah follows the same sort of approach that California follows, which is let's make it definite if we can. The court has the power to do that. Also relevant here is that the court excluded the extrinsic evidence proffered by the claimant, but accepted the extrinsic evidence proffered by the government in terms of what does this trust mean, what was the intent, et cetera. The government can't have it both ways, and the district court should not have treated it in two different manners. In here, we have declarations by the beneficiaries of the trust and a declaration by the trustee of the irrevocable trust, Evelyn Jankowski, indicating we knew as of 1992 when this was formed that the defendant properties is the race of the irrevocable trust. The government presented extrinsic evidence from Mr. Bouldry, who drafted the irrevocable trust agreement where he says, and this is 10 years later, he says, well, I don't really remember attaching this Exhibit A. Well, at the very least, we've got tribal issues of fact there. If Exhibit A has any legal significance. Exactly. And Exhibit A does have legal significance, we contend, under Heads. Dat. in California, and it has it under the cases that I've already discussed. Finally, in that regard, I'd like to address the constructive trust issue. If, indeed, even if it were the Bucelles themselves that did something improper by subsequently treating property that they don't own anymore, that would, the constructive trust would kick in at the time that the children, the beneficiaries of the trust agreement obtained an equitable interest in it, and that's at the time of the creation of the trust. The statute of frauds does not apply to constructive trust. That's clear in both California and in Utah. I would also like to address the statute of claims, sorry, statute of limitations issue, which the district court didn't reach because that was the cross motion for summary judgment, and the district court didn't reach it because it had disposed of the matter by saying the claims did not have standing. In the trust summary judgment motion, it was established that the government was on inquiry notice, at the very least, inquiry notice. I suggest that the evidence that was presented shows actual notice, but inquiry notice no later than August 18, 1995, when the government filed a motion in the Bucelles bankruptcy proceeding that alleged that there were some shenanigans going on. To use an informal term. Yet the government waited until 2001 to file the first of the forfeiture proceedings. This is beyond the five-year statute of limitations period, and based on that record, the district court should have granted the summary judgment in favor of the claimant, assuming, again, of course, that we get over the hump of the standing. Unless there are any other questions, I'd like to reserve my remaining time for rebuttal. Thank you. Good morning, Your Honors. I'm Ruth Pinkland, assistant United States attorney for the government. May it please the Court. The – what is undisputed in this case is that the claimants have no present ownership interest in this property. And even if you were to believe them that at one point that they had an ownership interest, they had no ownership interest in the ranch property for approximately nine years before the government filed the forfeiture action on the ranch property, and they had no ownership interest in the ski lodge in Utah for approximately six years before the government filed the forfeiture action. Therefore, they have no present ownership in this property, and they lack standing on that basis alone. Well, I take it the premise of your statement is that the transfer or purported transfer in Exhibit A or through the irrevocable trust document was ineffective in stripping or taking ownership away from whoever owned it before and putting it into the trust. Yes, Your Honor, although that is actually a separate argument, because if you were to determine the ownership of this property under California state law, you would look at the title records for the ranch property, and under the title records, the Bussell Family Trust had not had titles since 1993 when that property was transferred to the Star Hills Limited Partnership. But the argument is that in 1991, I think it was, sometime prior to that transfer, which I referred to as being behavior inconsistent with the notion it was in 1991, that property left the hands of the Bussells and the irrevocable trust and anybody else and went into the irrevocable trust so that any subsequent transfer to the partnership was irrelevant and ineffective. Yes, Your Honor, the claimant's position is that, in fact, that property transferred in 1992 when the irrevocable trust was created. But as we argued extensively in the district court and in this court, this what the claimants have proffered, the evidence that they've proffered to prove this ownership is an unauthenticated trust document with an unauthenticated Exhibit A, which purports to transfer absolutely everything that they own. And the objective evidence, the real property records demonstrate that the Doctors Bussell continued to own that property. It was continued to be owned by the revocable trust, the first trust, after the period of time that this alleged irrevocable trust came into existence and allegedly took title to all of these properties. So you've got this objective evidence that demonstrates title did not transfer, but the document itself, the trust agreement, is completely insufficient to act as a transfer of property. The trust agreement, and I'm speaking of the second trust, contains no description of this property. And in order to satisfy the statute of frauds, you have to have a description of the property. And the law in California and Utah is fairly similar. It's fairly consistent that in order to satisfy the statute of frauds and have an effective transfer of real property, you've got to have an adequate description of the property. And the cases cited by the government support that position. The Ogisthorpe case, the Utah case cited by the claimant, actually supports the government's position. We have referred to the Wasatch case, which is a fairly recent Utah Supreme Court case, which says that you've got to have a description of the property. Ogisthorpe, the relevant documents there actually contain a description of the partnership property. And you can see, if you look in the opinion, there's a specific portion where the court just decided not to list the full description of the property and it had brackets around the description of the property. So it's very easy to, in that, within that document, that partnership agreement, to identify what property the partners, the people were talking about. Similarly, with the Beverage v. Canton Glacier Mining case relied upon by the claimants, the California case, in that case, the California Supreme Court said the description has got to be reasonably certain and it has to furnish the means or key by which you can identify the property. In that case, the description in the relevant document was that it was the description was that it was near, it was, I believe, 70 acres more or less below Highway 8 near Canton Glacier Mine. And that was much more of a description. It was very descriptive and it was, it gave enough facts for a surveyor to come in and be able to establish where this property was. And in that case, it also had a receipt that was signed in Sacramento, California. So it was, you could see where the document was signed and where, what county the property was located in. By contrast, all we have in this case is this absolutely unauthenticated Exhibit A, which says everything that we own. And that exhibit is really inconsistent with the sales behavior. They deducted the mortgage interest for the ski lodge in Utah on their 1992 through their 1995 tax returns, which they signed under the penalty of perjury. The 1995 tax return, which was filed in 1997, sets forth that they lost the ski lodge due foreclosure, but that in any event, and I'm paraphrasing here, in any event, that asset became an asset of the bankruptcy estate and, you know, was not their asset to declare by 1997 when they filed the 1995 tax return. Do the beneficiaries of the irrevocable trust have any place in this discussion? No, Your Honor, they don't. That issue was not briefed either in the district court here as to what kind of an interest a beneficiary of an irrevocable trust has. But it's my understanding that they do not have the present benefit. They're not the appellants. No, they are not. Because only the trustee of the trust can represent the interest of the trust. And, Your Honor, I would like to point out, with respect to the declarations of the beneficiaries, there's several important points. Number one, all the language and the declarations of the trustee and the three beneficiaries are virtually identical. And they all contain a particular paragraph which says, it is my understanding that since 1992 this property has been in the trust. And the government filed formal objections on a number of bases. And the primary was this is these witnesses, these declarations lacked foundation. Clearly, it had to have been based on hearsay, because for someone to say it is just my understanding, there's really nothing about how they came to that knowledge. And the government objected on those grounds, and the district court excluded it on that basis for lack of foundation and also because the district court considered it to be parole evidence. And the claimants mentioned that there was a triable issue of fact as to Exhibit A. There really is no triable issue of fact as to Exhibit A. The district court did consider it to be authentic for the purposes of the argument, but the claimants had no witness who could authenticate that document. And the government, in fact, had a witness who said, I never would have attached this kind of a description to an irrevocable trust, because an irrevocable trust has significant tax consequences. You're transferring title of property away from you, and this is not the kind of document I ever would have attached. But, again, the district court didn't even need to reach that issue. It merely looked at the language of Exhibit A and determined Exhibit A didn't contain a description of the property. One other issue I would like to raise with respect to the declarations, and that is, during the discovery phase of this case, which was actually quite abbreviated. We had about 60 days to do discovery and file the summary judgment motions. The government attempted to find out what information, what witnesses and documents the claimants had, and as a result, the government noticed the depositions of each trust entity to try to flush out what their story was. And the end result is the trust said, we don't have any knowledgeable witness that we can provide. So the government entered into a stipulation with them, a stipulation of facts, which was filed with the court and became a court order. And pursuant to that stipulation, they said, we have no witness who can testify about the transfer of any asset into their revocable trust. We have no witness who can testify about the management of any asset. We have no knowledge about how or whether any tax returns were filed. We have no knowledge about the drafting of either trust instrument. And then two weeks later, after that stipulation and order were filed with the court, the parties filed summary judgment motions, and the declarations from the claimants came forth at that point. So as an additional ground for the government's objection, it was that these declarations by the beneficiary saying, it is my understanding that this property has belonged to the trust since 1992, we objected because that violated the stipulation and order which was filed with the court. On this issue that claimant raised as to the government having to prove it has standing, there's just simply not a lot of support. That is clear that as a threshold matter, claimants must prove their standing, and the governments do not have to prove their entire case before you reach the issue of claimant standing. And then with respect to this issue of the government not demonstrating the forfeitability of the property, the government submitted extensive records showing the forfeitability of the property. We had declarations, deeds, documents from the criminal case, and all of that was completely undisputed by the claimants. There really was no dispute of any of the facts submitted by the government, and there was no dispute from the claimants as to the declaration of Robert Beaudry, the attorney for the Dr. and Mrs. Bussell, who drafted these documents for them and participated in this fraud scheme with them from the early 1990s up into the mid-1990s. Claimants also attempt to distinguish the Hegstad case, which is a California case on the transfer of property. Hegstad, and the district court did find this, Hegstad is only applicable to a revocable trust, not an irrevocable trust, because when you have a revocable trust and you transfer property from yourself as an individual to yourself as trustee of the revocable trust, it is not a transfer of ownership. And generally speaking, a transfer into a revocable trust is never a transfer in ownership. You still own the property. And so the Hegstad court found that it was okay if you didn't have a deed because you really, you weren't going to be transferring ownership. But that's very distinguishable from an irrevocable trust situation, where by definition an irrevocable trust, if you transfer an asset to an irrevocable trust, you no longer own it, and therefore you do need to satisfy the statute of frauds and have a document in writing which sets forth your actual transfer of that particular asset. Now, with respect to the argument that the statute of frauds does not apply to a constructive trust, it is true that the case law says that statute of frauds does not apply in a constructive trust situation. However, it would still apply here because the claimants would have to be able to prove the elements of a constructive trust. And the first element is you have to demonstrate your right to the res. And in order to demonstrate that they actually have a right to this property, you have to look at the written documents, none of which describe this property. And you really have to look at California law to determine whether or not they have a right to this res. And under California law, you have to look at whether or not the document satisfies the statute of frauds. And the claimant's argument on the constructive trust issue really is rather circular because in order for them to qualify as a, as under a constructive trust, as I said, they've got to show that they have a right to the res and also to the property and that someone wrongfully acquired that property from them. And then they've got to prove all of this by clear and convincing evidence. And there really is no evidence that this property was wrongfully taken from this trust because, again, you have to demonstrate that this trust owned the property to begin with. And there really is insufficient evidence to demonstrate that the irrevocable trust ever owned this property. And all the evidence, in fact, is to the contrary, that the irrevocable trust never owned this property. You have all of this, you know, public records of all of these deeds. You have the Bissell's tax returns filed under the penalty of perjury. You have the Bissell's bankruptcy petition filed under the penalty of perjury where they list the ski lodge in Utah as being owned by them, a 100 percent fee simple absolute. And then you have John Bissell's deposition testimony in the bankruptcy, which is also part of the record, in which he describes these assets and describes how they are in this irrevocable trust of which he and his wife are trustees. By contrast, you've got this Exhibit A, which is unauthenticated, which says everything we own is in this trust. And that's really insufficient to demonstrate by clear and convincing evidence that the irrevocable trust ever had a right to this rest. And this evidence is also insufficient to demonstrate the third element for constructive trust, which is that this asset was wrongfully acquired from this trust. There are no declarations from these trustees saying, well, it was mine, it was ours, we knew it was wrong, it was ours, and somebody made a promise to us. They promised that they were going to take the property temporarily, they were going to transfer it back. There's just no evidence that this property was ever wrongfully acquired from either this trust or the revocable trust, because the evidence demonstrates that the Doctors Bucell participated in this fraud. And if you were to determine that the property was wrongfully acquired from the revocable trust, it would basically be a determination that they defrauded themselves, because the revocable trust was in fact the Bucells. Finally, on the statute of frauds issue, the statute of frauds, which applies to this case, says that the statute of frauds is told during the period of time any asset is concealed. And, again, the district court did not reach this issue below.  The evidence that was available to the IRS in August of 1995 was really insufficient to demonstrate that these assets were really still owned by the Bucells and or, excuse me, that the condominium was still owned by the Bucells and that there was bankruptcy fraud as to the condominium. In August of 1995, what you had was the IRS Collections Division, which is basically a collection agency trying to collect on a large tax debt owed by the Bucells. And the IRS had recorded a lien on the ski lodge in Utah for about approximately $1 million, and it was attempting, it was just like a creditor attempting to collect on its debt. And what you see in the record is the IRS didn't get any notice of the foreclosure action, and it was an IRS revenue agent went in to try to stop the foreclosure action so they would have some time to explore the issue, because they had no notice of the foreclosure. And they were trying to preserve the government's rights as a creditor, not a criminal investigation, but the government's rights as a creditor to collect on its debt. In any respect, the government did not have the evidence that the Bucells still owned the condominium until it interviewed Mr. Beaudry in April of 2000 when he told the government John Bucell lacked any good faith belief that he owed a debt to the condominium in Utah home loan, which was then the title holder of the condominium. So that was the first point that the government got that evidence. That was April of 2000. With respect to the ranch property in San Diego, the government did not learn until January of 2001 after it got a crime fraud order allowing it to talk to Mr. Beaudry about privileged issues. That's when the government learned that the Bucells were really the owners of CIBM, which was the then title holder on the property in San Diego. And the government would point out that the Fifth Amendment privilege against self- incrimination and the attorney-client privilege really stood between the government and its ability to learn that the Bucells still owned these assets. They were concealed during this whole period of time, and therefore the statute of limitations was told. There was a very tangled and complicated web woven by the Bucells to conceal these assets. And just because the claimants think, well, the government should have figured that all out in 1995, really seems to me, with respect to all of the properties, at the very least it would raise an estoppel issue, that they would be estopped from raising the statute of limitations because it was so complicated. And it's rather ironic that the claimants contend, if you believe them, that they owned this property and that they didn't even realize that they had been defrauded out of this property until the government's filed these forfeiture actions. And it's certainly ironic that the government is supposed to be omnipotent and know exactly that the Bucells engaged in all these tangled transactions to conceal their assets when the alleged real owner of the property, the irrevocable trust, had no idea that it didn't own the property anymore and hadn't owned it for six to nine  years. I think we have your position. Is there anything further that you need to cover? I don't believe so. I don't believe so either. Thank you. Thank you. A lot of grounds to cover in the short time that I have. There have been repeated references by the government to the trust document, the irrevocable trust document, being unauthenticated. The government is not utilizing the appropriate standard of either the district court analyzing the summary judgment or standard of review from a summary judgment ruling. The evidence must be construed most favorably to the party resisting the summary judgment. And that's inconsistent. That is not the position that the government has been advocating. With regard to ---- What evidence can be viewed if it's not authenticated or potentially authenticated in some fashion? What's the basis for getting the exhibit in front of the court? Even on summary judgment, you have to submit admissible evidence. And there is a declaration. There was a declaration by the attorney indicating attached here to his exhibit, whatever exhibit it was. By what attorney? By the attorney for the claimant. Well, how does he have personal knowledge that this is an authentic document? Does he purport to have prepared it? I don't believe he ---- It's a common practice. Attorneys are frequently doing that. But that never authenticates a document because the attorney never has personal knowledge of a document like that. He's saying basically this is evidence we're going to submit, but that doesn't authenticate. I understand the position Your Honor is advocating. I believe, and I don't have the declaration right in front of me, but I believe there was some indication, and again, I'm saying this with somewhat of a caveat, but I believe there was some indication by Mr. Kaufman that he had been ---- I know there was an indication he had been involved in the ---- in more than just representing the claimants in this particular action. However, I do not know and I cannot straightforward say that he said I was involved with preparing because I believe that was all Robert Bowdrey. It's a document that's dated 88. It was apparently 92. Mr. Kaufman has no sign of being involved at that point. Right. And there's ---- As far as the backdating, the record is absolutely unclear as to what the purpose of it was. I don't want to get to why, but in terms of getting an exhibit in front of the court on summary judgment, you still have to satisfy the requirements for authentication and there's a fair question as to whether claimants have done that or did that at the appropriate time. I understand the concern. As far as Beverage v. Canton, and the government has just stated that there must be a means or a key and there was nothing here other than the Exhibit A, assuming, except the Exhibit A. In point of fact, the documents that were put in front of the district court included trust ---- deeds of transfer to the Bucelles, to the revocable trust that contained all the legal descriptions for the various properties, and that is what the district court, we contend, should have looked at. It was in front of the district court as far as filling in the blanks, if you will, in the exhibit. The government has contended that the ---- that there was nothing, no interest whatsoever on the part of the claimant or the beneficiaries, the ultimate, you know, irrevocable trust. Well, let's keep in mind this is an irrevocable trust. And while the race of an irrevocable trust can change forms, it is still the beneficiary's equitable interest at the time that trust is created. They have an equitable interest. If the trustee, for instance, abstains with everything, the trustee's breaching of fiduciary duty owes to the beneficiaries and they have a right to pursue it. If, on the other hand, a third party engages in fraudulent activity, the beneficiaries and the trust itself would have the right to go after it, but it's for the benefit of the beneficiaries, and that is a present interest. It must also be reminded ---- I must also remind this Court that for standing purposes, the claimant does not need to, at that point in time, establish outright its ownership as against the world. It needs to meet a minimal threshold level of showing that it has an interest, a colorable claim to the properties that the government seeks to seize. As far as Hegstead not applying to revocable ---- I'm sorry, excuse me, irrevocable trust, there is no case law so far, perhaps there will be soon, that indicates that Hegstead, that the rationale of Hegstead cannot be applied to an irrevocable trust, and there is no sound basis for distinguishing it on that basis. I will also refer to this Court, and this Court has not yet ruled on our request for judicial notice, but the probate courts, the California probate courts, are not treating Hegstead motions solely as to revocable trust. And, again, I do not believe our request for judicial notice has been ruled on as of yet. That's correct. And for ---- as far as that the IRS investigation, that it was just a collection person and so the government didn't really know anything about this, was not on inquiry notice, once again, it's inquiry notice. Is there enough there to put the government, some arm or branch of the government on notice that you better check into this, and if you don't, it's to your interest to, you know, you suffer the losses accordingly. I can't go into it now with less than a minute left, but in our ---- Less than a minute over. Your time has expired. Oh, I'm sorry. I will only refer you to the motion for summary judgment then. Thank you. Thank you. We thank both counsel. The case just argued is submitted, and we will proceed to the final case on this morning's calendar.
judges: Noonan, Clifton Fogel